# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| MOHAMMED AMRAN CHOWDHURY, | Case No.: 2:24-cv-00953 |
| Plaintiff, | |
| vs. | |
| FIRST AMERICAN MORTGAGE SOLUTIONS, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Mohammed Amran Chowdhury ("Plaintiff" or "Mr. Chowdhury") brings this action on an individual basis, against First American Mortgage Solutions, LLC ("Defendant" or "First American") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is

1

intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7. Congress made the following findings when it enacted the FCRA in 1970:

(a) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
(b) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
(c) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
(d) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

8. Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

9. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record

the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

13. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14. Plaintiff brings claims against Defendant First American for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs consumer report, in violation of the FCRA, 15 U.S.C. § 1681e(b); for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff

disputed was inaccurate and in fact, the product of a mixed file, and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

15. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## PARTIES

16. Mohammed Amran Chowdhury ("Plaintiff" or "Mr. Chowdhury") is a natural person residing in Ft. Myers, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant First American Mortgage Solutions, LLC ("Defendant" or "First American") is a corporation with a principal place of business located at 1 First American Way, Santa Ana, California 92707, and is authorized to do business in the State of Florida, including within this District. First American can be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

18. First American Mortgage Solutions, LLC is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). First American is regularly engaged in the business of assembling, evaluating, and disseminating information concerning

consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

21. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

22. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

23. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

24. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

25. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## THE "MIXED FILE" PROBLEM

26. A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

27. A "mixed file" occurs when personal and/or credit information belonging to Consumer B appears in one or more of Consumer A's credit reports.

28. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

29. "Mixed files" create a false description and representation of a consumer's credit history and result in the consumer not obtaining credit or other benefits of our economy.

30. No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. §1681e(b) and may be found to have willfully violated the FCRA when it mixes one consumer's information into another consumer's report.

31. Notably, the Federal Trade Commission has specifically warned consumer reporting agencies to review their procedures when a mixed file occurs.

32. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## FACTUAL ALLEGATIONS

### Plaintiff Applies to Refinance his Mortgage

33. On or about January 25, 2024, Plaintiff submitted an application to refinance his mortgage on his home located in Ft. Myers, FL.

34. The Ft. Myers, Florida property is the only property Plaintiff owns.

35. Plaintiff wanted to refinance his house to pay for renovations he was planning to complete his home. Plaintiff also planned to invest any remaining funds in a small business.

36. For Freedom Mortgage to make a determination on Plaintiff's mortgage application, it would need to obtain copies of his credit files. Plaintiff provided Freedom Mortgage with his personal identification information, including his Social Security number, and authorized it to obtain copies of his credit files.

37. On February 15, 2024, Plaintiff received an email from the Freedom Mortgage loan officer he had been working with concerning his refinancing. The Freedom Mortgage loan officer requested additional information concerning a property and lien on the Bronx, New York property. Plaintiff explained that the only real property he has ever owned is his current house in Ft. Myers, Florida and that he never owned property in New York.

**Freedom Mortgage Denies Plaintiff's Mortgage Refinance Application**

38. On or about February 19, 2024, Plaintiff received an email from Freedom Mortgage which included an adverse action notice to Plaintiff. Within that letter, Freedom Mortgage communicated that it had denied Plaintiff's mortgage refinance application due to information reported by Defendant.

39. Specifically, Freedom Mortgage's adverse action notice provided the following reason for denying Plaintiff's mortgage refinance application: "Excessive obligations in relation to income."

40. After reviewing the denial letter, Plaintiff contacted his loan office at Freedom Mortgage to understand why he was denied.

41. The Freedom Mortgage loan officer told Plaintiff the denial was due to his undisclosed New York property. The loan officer further explained that because of the potential debt owed on that property, his debt-to-income ratio was too high to qualify him for refinancing.

42. Plaintiff again explained to the Freedom Mortgage loan officer that he did not own any property in New York. However, the Freedom Mortgage loan officer insisted that the New York property belonged to him.

43. During the loan underwriting process Freedom Mortgage received a "FraudGuard" report and other information from Defendant. The information about the New York property and lien came in the "FraudGuard" report from Defendant.

44. Plaintiff was shocked and dismayed that his mortgage refinancing denial was due to a property that he allegedly owned in Bronx, NY as Plaintiff had never even been to New York, let alone own property in NY.

45. The credit file provided to Freedom Mortgage by Defendant was patently false. The Bronx, New York property with a lien belongs to a different

11

consumer, Mohammed **Arif** Chowdhury with the date of birth in **August 1972**. Plaintiff has a different middle name, **Amran**, and was born in **June 1968**.

46. Due to Defendant's inaccurate reporting, Plaintiff was unable to refinance his mortgage which he needed in order to perform renovations in his home and make a small business investment.

47. Defendant inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from New York County, New York regarding the lien records prior to publishing Plaintiff's report to Freedom Mortgage.

48. Had Defendant performed even a cursory review of the underlying public records, it would have discovered that the New York property and lien belongs to a different consumer who is wholly distinguishable from Plaintiff by their middle name, date of birth, social security number, and address history.

49. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

50. Specifically, by reporting that the aforementioned New York property and lien in the consumer report presumably about Plaintiff, despite the fact that the property and lien did not belong to Plaintiff, Defendant failed to follow reasonable

procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. §1681e(b).

**Plaintiff's Dispute to Defendant**

51. On or about April 9, 2024, Plaintiff sent a dispute letter to Defendant, via certified mail, and disputed the Bronx, New York property that does not belong to him.

52. Plaintiff, in his dispute letter, included his date of birth and the last four digits of his social security number. Plaintiff also provided the Freedom Mortgage account number associated with his mortgage refinance application.

53. Along with his dispute letter, Plaintiff enclosed a copy of his driver's license to better assist Defendant in identifying him in its system.

54. Plaintiff requested that Defendant reinvestigate the disputed information.

55. Upon information and belief, First American received Plaintiff's dispute letter on April 12, 2024.

**Defendant's Unreasonable Dispute Reinvestigation**

56. Plaintiff never heard back from Defendant regarding his dispute.

57. Defendant failed to conduct a reasonable investigation of Plaintiff's April 8, 2024, dispute, or any reinvestigation whatsoever, to determine whether the

disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

58. Thereafter, and upon information and belief, Defendant failed to unmix Plaintiff's credit file from that of the other consumer and likely Defendant continued to report the other consumer's information to Plaintiff's credit file.

59. Plaintiff concerned the mixed file issue would continue to impact his refinancing has held off applying to refinance his mortgage.

60. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking loans by prejudicing their prospective lenders with inaccurate property lien information.

61. Defendant's inaccurate report cost Plaintiff being able to refinance his mortgage.

62. As a result of the "mixed file," Defendant made it practically impossible for Plaintiff to refinance his house.

63. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and rights of Plaintiff herein.

64. Defendant is aware of the shortcomings of its procedures and intentionally chose not to comply with the FRCA to lower its costs. Accordingly, Defendant's violations of the FCRA are willful.

65. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by not being able to refinance his mortgage; loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his debt to income ratio; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of having his mortgage refinance application denied and having another consumer's property and lien mixed into Plaintiff's credit report.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendant First American)**

66. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

67. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. §1681(a)(f).

68. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

69. At all times pertinent hereto, Defendant's above-mentioned "FraudGuard" report was a "consumer report" as that term is defined by 15 U.S.C. §1681a(d).

70. Defendant violated 15 U.S.C. §1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the credit reports it published concerning Plaintiff.

71. As a result of Defendant's violation of the FCRA, Plaintiff suffered damages including but not limited to, damage by loss of not being able to refinance his mortgage; loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his debt to income ratio; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of having his mortgage refinance application denied and having another consumer's property and lien mixed into Plaintiff's credit report.

72. Defendant willfully violated 15 U.S.C. 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

73. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendant First American)

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

75. The FCRA mandates that Defendant conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

76. The FCRA provides that if Defendant conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

77. Plaintiff initiated a dispute with Defendant and disputed inaccurate information reporting in his credit report and requested that Defendant correct and/or

delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

78. Defendant failed to respond to Plaintiff's dispute and conducted *no* investigation of Plaintiff's dispute, or such investigation, if any, was so unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

79. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit report.

80. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by having his mortgage refinance application denied; loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his debt to income ratio; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish,

humiliation, and embarrassment of having his mortgage application denied and having another consumer's property and lien mixed into Plaintiff's credit file.

81. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

82. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 14th day of October 2024 ,

                 **CONSUMER ATTORNEYS**
                 /*s/ Catherine Tillman*
                 Catherine Tillman, Esq., FL #0057663
                 CONSUMER ATTORNEYS
                 8095 N. 85th Way
                 Scottsdale, AZ 85258
                 T: (941) 263-7310
                 F: (718) 715-1750
                 E: ctillman@consumerattorneys.com

                 *Attorney for Plaintiff,*
                 *Mohammed Amran Chowdhury*