UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MOHAMMED AMRAN CHOWDHURY,

      Plaintiff,

v.                      Case No:  2:24-cv-953-JES-KRH

FIRST   AMERICAN   MORTGAGE
SOLUTIONS, LLC,

      Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on review of the Motion for Summary Judgment (Doc. #37) filed on September 26, 2025, by Defendant First American Mortgage Solutions, LLC ("First American").  Also pending is the Motion for Partial Summary Judgment (Doc. #39) filed by Plaintiff Mohammed Amran Chowdhury ("Chowdhury") on September 26, 2025.  Both parties filed Responses (Docs. ##54, 57) on November 7, 2025, and Replies (Docs. ##63, 65) on November 21, 2025, to the respective Summary Judgment motions. With leave of Court, on December 12, 2025, First American filed a Sur-Reply to Chowdhury's Motion for Partial Summary Judgment (Doc. #72). For the reasons set forth below, both motions are denied.

**I.**

Summary judgment is appropriate only when a movant shows that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party.  McCreight v. AuburnBank, 117 F.4th 1322, 1329 (11th Cir. 2024).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).  On cross-motions for summary judgment the Court views the facts in the light most favorable to the nonmoving party on each motion.  Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n, 127 F.4th 1294, 1301 (11th Cir. 2025); Signor v. Safeco Ins. Co. of Illinois, 72 F.4th 1223, 1227 (11th Cir. 2023.)

## II.

### A.  First American's FraudGuard Service

First American provides a range of products and services to mortgage lenders from the pre-funding process through closing. (Doc. #39 at p. 3.)  One such service is FraudGuard, which First

American describes as a mortgage fraud mitigation tool ("MFMT"). MFMTs cross reference a prospective borrower's mortgage application with certain "credit header data" (e.g. name, current and previous addresses, date of birth, social security number, phone, and email) obtained from providers (here, the LexisNexis Accurint product) to identify data inconsistencies or omissions on a mortgage application that may indicate fraud.  (Doc. #37 at p. 3.)   Using this information, FraudGuard prepares a report for use by its customer, here Freedom Mortgage Corporation ("Freedom Mortgage").

First American's use of the Accurint products is governed by a "Reseller Agreement" between First American and LexisNexis which precludes First American (and its end users) from using the Accurint product in any way that would cause the use to fall within the scope of the Fair Credit Reporting Act ("FCRA").  (Id. (citing Doc. #37-8, Exh. 4 § 4.8(B)(2)).)   In turn, First American and Freedom Mortgage agreed to a Statement of Work Contract ("SOW"). (Id. at p. 6.)   Pursuant to the SOW, Freedom Mortgage "certifies that it will not use any of the information it receives through [FraudGuard] to determine, in whole or in part an individual's eligibility for . . . (1) credit or insurance to be used primarily for personal, family or household purposes" and that it "shall not use any of the information it receives through [FraudGuard] to

take any 'adverse action,' as that term is defined in the FCRA." (Id.)  The SOW gives First American the right to audit Freedom Mortgage's use of FraudGuard services and to immediately terminate the SOW if First American discovers that Freedom Mortgage has violated any term or condition.  (Id.)

### B. Chowdhury's Mortgage Applications to Freedom Mortgage

On January 3, 2024, Chowdhury submitted his first application to Freedom Mortgage to refinance his home. (Doc. #39 at p. 4.) Freedom Mortgage ordered and received a FraudGuard Report regarding Chowdhury from First American.  (Id.)  The January 2024 FraudGuard Report contained an alert for a "potential undisclosed liability or property" with the following name and address: Mohammed A. Chowdhury, 1314 Teller Avenue, Bronx, New York 10456. (Id. at 4-5.)  The FraudGuard Report also contained the names of two individuals who have different birth years and/or middle names than Chowdhury: (1) Mohammed Arif Chowdhury, born in 1974; and (2) Mohammed A. Chowdhury, born in 1972.  (Id.)  The January 2024 FraudGuard report assigned a scoring summary of "400 critical risk."  (Id. at p. 4.)

On February 1, 2024, Chowdhury submitted a second mortgage application with Freedom Mortgage to refinance his home.  (Id. at p. 5.)  The February 2024 FraudGuard Report once again showed a scoring summary of 400 critical risk and reported the same

-4-

potential undisclosed property associated with Chowdhury.  (Id.) On April 8, 2024, Chowdhury sent a letter to First American disputing ownership of the property and asserting that he had never visited or lived in New York.  The parties dispute whether First American received the letter.  (See Docs. ## 37 at p. 10, 39 at p. 15.)

Freedom Mortgage also submitted Chowdhury's second application to two automatic underwriting systems: Fredie Mac's Loan Product Advisor ("LPA") and Fannie Mae's Desktop Underwriter ("DU").  (Doc. #37 at p. 8.)  For a conventional loan, Freedom Mortgage requires approval from either LPA or DU.  (Id.)  Neither underwriting servicer approved Chowdhury's loan application: LPA identified the risk class for Chowdhury's application as "caution" and DU recommended that Chowdhury's application be "approved/ineligible," based on "credit profile, debt-to-income ["DTI"] ratio, housing expense ratio, and loan purpose."  (Id. at pp. 8-9.)  On May 10, 2024, Freedom Mortgage declined Chowdhury's second mortgage application, citing "excessive obligations in relation to income."  (Doc. #37 at p. 7.)

Chowdhury filed this federal lawsuit against First American on October 14, 2024, asserting two claims for relief pursuant to the FCRA.  Both parties now move for summary judgment for various reasons.

III.

Since both claims against First American are brought pursuant to the FCRA, the Court begins by considering its principles and applicability.

## A. FCRA Applicability

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). The FCRA "imposes a host of requirements concerning the creation and use of consumer reports." Spokeo, Inc. v. Robins, 578 U.S. 330, 335 (2016). First American asserts it is entitled to summary judgment on both claims because: (1) First American is not a "consumer reporting agency," and (2) the FraudGuard report is not a "consumer report." (Doc. #37 at pp. 13-17). The Court finds that a reasonable jury could find otherwise.

### (1) Consumer Reporting Agency

An entity is a "consumer reporting agency" under the FCRA where it "(1) regularly engage[s] [in whole or in part] in the practice of assembling or evaluating consumer credit information or other information on consumers, (2) for monetary fees, (3) for the purpose of furnishing consumer reports to third parties, and (4) us[es] a facility of interstate commerce to either prepare or distribute those reports." Dias v. Blackstone Consulting, Inc.,

-6-

No. 5:23-CV-497-GAP-PRL, 2024 WL 2132627, at *3 (M.D. Fla. Apr. 30, 2024) (citing McGrath v. Credit Lenders Serv. Agency, No. 20-2042, 2022 WL 580566, *5 (E.D. Pa. Feb. 25, 2022) (quoting § 1681a(f))).

The only element First American disputes is the requirement that its actions be "for the purpose of furnishing consumer reports to third parties."  First American argues that it "is not a 'consumer reporting agency' under the FCRA because it intends lenders to use FraudGuard for the purpose of fraud mitigation, not for credit eligibility." (Doc. #37 at p. 13.)  First American relies primarily on the Second Circuit Court of Appeals decision in Kidd v. Thomson Reuters Corp., 925 F.3d 99 (2d Cir. 2019), which concluded that "the long-standing meaning of 'for the purpose of,'. . . requires specific intent to provide a statutorily-defined 'consumer report.'"  Id. at 106.  First American argues that it lacks the required specific intent that FraudGuard be used as a consumer report, and that it takes reasonable steps to ensure FraudGuard is not used for any purpose under the FCRA.  (Doc. #37 at 15-16.)

Kidd is not binding authority, and the Court finds that it is distinguishable for two reasons.  First, the FraudGuard report is different than the Thomson Reuters CLEAR platform at issue in Kidd because the FraudGuard report assembles credit header data from

multiple sources (which are the functional equivalent of "furnishers" under the FCRA), including the CLEAR platform and LexisNexis's Accurint product, then cross checks that information against various public property records and the information submitted on the mortgage application.  Moreover, although First American maintains that it contractually preserves the right "to audit end-users' use of FraudGuard and terminate for any discovered misuses, including misusing FraudGuard for credit eligibility," the record does not show that it actually employed such measures to prevent misuse in this case.

As the Kidd court noted, "[f]or the purposes of the FCRA, indeed for any scienter determination, the totality of a defendant's actions is the determining factor, not the defendant's mere disclaimer of the requisite intent." Kidd, 925 F.3d at 107. Here, the totality of circumstances does not establish beyond dispute that the contractual language from the FraudGuard user agreement was sufficient to establish a lack of specific intent to furnish a consumer report for FCRA purposes or acted as a "mere disclaimer" of the requisite intent.

### (2) Consumer Report

Under the FCRA, a "consumer report" is "any written, oral, or other communication of any information . . . bearing on a consumer's credit worthiness, credit standing, credit capacity,

-8-

character, general reputation, personal characteristics, or mode of living[,]" that is "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance . . .; employment purposes; or any other purpose."  15 U.S.C. § 1681a(d)(1).

A reasonable juror could find that FraudGuard easily falls within this definition.  It is a written communication of "any information" bearing on a consumer's credit worthiness, standing, or capacity, as well as the consumer's character and general reputation, and personal characteristics and mode of living.  The information in the FraudGuard is "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance . . . or any other purpose."  It is hard to envision how determining that a mortgage applicant is or is not a risk of committing fraud does not affect his credit rating/eligibility with a lender.

However, while the evidence is sufficient to deny First American's request for summary judgment, it is not sufficient to compel summary judgment in favor of Chowdhury.  A reasonable juror could agree with First American that the reports are only used for Fraud Prevention – something separate and distinct from any of the

-9-

seven factors outlined in § 1681a(d)(1).  As First American points out, Freedom Mortgage (and other lenders) employ separate procedures to determine credit eligibility, including underwriting approval from Freddie Mac's LPA service or Fannie Mae's DU service.

Accordingly, the Court concludes that a material dispute of fact exists as to whether First American met the statutory definition of a consumer reporting agency under 15 U.S.C. § 1681a(f) and whether the FraudGuard report constituted a consumer report under 15 U.S.C. § 1681a(d)(1).  Therefore, the Court denies both parties' motions for summary judgment as to this issue.

### C. Chowdhury's FCRA Claims

#### (1)   Count I: (15 U.S.C. § 1681e(b))

As previously noted, the FCRA "imposes a host of requirements concerning the creation and use of consumer reports." Spokeo, Inc., 578 U.S. at 335.  "One of those requirements is that consumer reporting agencies 'follow reasonable procedures' to ensure 'maximum possible accuracy' of information in consumer reports." Erickson v. First Advantage Background Services Corp., 981 F.3d 1246, 1251 (11th Cir. 2020) (quoting 15 U.S.C. § 1681e(b)). Chowdhury alleges in Count I that First American's actions fell short of this statutory obligation.

First American asserts that it is entitled to summary judgment on this count because a consumer must present evidence that a

consumer report was inaccurate, while the FraudGuard report merely

contains "potential discrepancies in the loan application" (Doc.

#37 at pp. 17-18) rather than inaccurate statements.  Chowdhury

responds that there can be no doubt that First American reported

inaccurate information about Chowdhury to Freedom Mortgage when,

on two occasions, First American sold FraudGuard reports to Freedom

Mortgage which stated that Plaintiff owned property on Teller

Avenue in the Bronx, New York.  (Doc. #37 at pp. 13-14.)  Chowdhury

further asserts that First American reported inaccurate

information when it included information about two different

consumers in the FraudGuard reports.  (Doc. #39 at p. 14.)

The Court finds that a reasonable juror could conclude that

First American made an inaccurate statement and/or a statement

that is objectively likely to mislead its intended user when it

listed the Teller Avenue property as a "potential undisclosed

liability or property" and listed two unrelated consumers.  While

First American maintains that the insertion of the qualifier

"potential" renders its reporting non-actionable, the Court is

unpersuaded.  See e.g. Milkovich v. Lorain Journal Co., 497 U.S.

1, 18-19 (1990) (noting, in the defamation context, that a

statement of opinion may be actionable if it implies an assertion

of objective fact).

-11-

Chowdhury in turn asserts that he is entitled to summary judgment on this count because "it is undisputed that the Defendant does not have any policies and/or procedures in place to assure the maximum possible accuracy of its FraudGuard Reports." (Doc. #39 at p. 15.) The Court finds that the deposition cited in Chowdhury's summary judgment motion merely creates a triable issue of fact as to whether First American's policies and procedures were sufficient to ensure maximum possible accuracy. Accordingly, both parties' summary judgment motions are denied as to this claim for relief.

### (2) Count II: (15 U.S.C. § 1681i)

Under Section 1681i, a CRA is required to conduct a "reasonable reinvestigation" whenever a consumer disputes the completeness or accuracy of information in their file and notifies the agency directly. 15 U.S.C. § 1681i. In Count II of the Complaint, Chowdhury alleges that First American conducted no investigation of his dispute, contrary to the requirement of Section 1681i.

First American asserts that it is entitled to summary judgment on this claim because it never received Chowdhury's dispute letter, thus it was never notified of any inaccuracy. (Doc. #37 at p. 7.) According to First American's Motion for Summary Judgment, had it received the dispute notice the letter would have been scanned

into the system and routed to the appropriate business unit for logging.  Here, no such letter was ever scanned into the system.  (Id. at p. 10.)  To support this position, it cites to copies of correspondence between a representative for First American and a representative for USPS indicating that the mail carrier, and not an agent from First American, signed for the package.  (Doc. #37-20, Exh. 16.)

The Court finds that First American's evidence regarding the USPS signature is not dispositive for summary judgment purposes. Instead, for purposes of summary judgment, this creates a triable issue of fact as to whether First American received the notice. Accordingly, both parties' summary judgment motions are denied as to Count II of the Complaint.

### (3) Causal Connection

First American further argues that it is entitled to summary judgment on both counts because Chowdhury has failed to establish a causal connection between the inclusion of the Teller Avenue address on his FraudGuard report and the denial of his mortgage application with Freedom Mortgage.  According to First American, Freedom Mortgage did not deny Chowdhury's loan application based on any information provided by First American.  Instead, Freedom Mortgage denied Chowdhury's application due to his "excessive obligations in relation to income", as stated by the plain language

of the adverse action letter sent to Chowdhury via mail on May 10, 2024. (Doc. #37-17, Exh. 13 at p. 1.)

First American's argument is supported by the record evidence. A letter addressed to Chowdhury, dated February 19, 2024, lists his "excessive obligations in relation to income," as the "Principal Reason(s) for Credit Denial, Termination, or Other Action Taken Concerning Credit." (Doc. #37-17 at p. 1.) The letter further indicates that the credit determination was made only based on information obtained from the listed consumer reporting agency, Equifax Disclosure Department. (Id.) Deposition testimony from Kevin Kelly, corporate representative for Freedom Mortgage, supports the assertion that the mortgage application was denied based on Chowdhury's debt-to-income ratio ". . .without considering any obligations to the Teller Avenue property." (Doc. #37-13, Exh. 9 at pp. 68-69.)

Chowdhury responds that his credit denial could have "undoubtedly" been caused by the inclusion of the New York property in the FraudGuard report. However, other than testimony that Freedom Mortgage uses FraudGuard reports in the process of making decisions *generally*, Chowdhury presents no evidence that Freedom Mortgage used the FraudGuard report in denying *his* mortgage.

To the extent First American is liable on Counts I and II of the Complaint, damages cannot include amounts in connection with

-14-

Freedom Mortgage's denial of Chowdhury's loan application. However, First American's conclusion that it is therefore entitled to summary judgment on Chowdhury's claims is misplaced for two reasons:

First, Chowdhury has pled claims against First American for willful (15 U.S.C. § 1681n) violation of the FCRA, and "[p]roperly understood, a consumer alleging a willful violation of the Act doesn't need to prove actual damages to recover "damages of not less than $100 and not more than $1,000." Santos v. Healthcare Revenue Recovery Group, LLC., 90 F.4th 1144, 1158 (11th Cir. 2024). Second, Chowdhury has shown a concrete injury separate and apart from the denial of his mortgage application in the form of emotional distress and time he spent contesting the inaccurate information.  (See Doc. #44-15 at pp. 57-61.)  "Because there is no question that wasted time is a concrete harm," the Court finds that Chowdhury has proffered sufficient evidence to defeat First American's motion for summary judgment as to the issue of damages. See Losch v. Nationstar Mortgage LLC, 995 F.3d 937, 943 (11th Cir. 2021) (citing Salcedo v. Hanna, 936 F.3d 1162, 1172-73 (11th Cir. 2019). See also United States v. Stein, 881 F.3d 853, 858-59 (11th Cir. 2018) (en banc).

First American nevertheless asserts that the Court should dismiss Chowdhury's claims for willful violation under § 1681n

because First American's interpretation of the FCRA is objectively reasonable.  (Doc. #37 at p. 18.)  Chowdhury responds, in part, that the issue of whether First American's interpretation of the FCRA was objectively reasonable should be left to the jury.  (Doc. #39 at p. 11.)  The Court agrees with Chowdhury.

To establish a willful violation of 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i(a)(1)(A), Chowdhury must show that First American acted either knowingly or recklessly.  Losch, 995 F.3d at 947.  "A credit-reporting agency recklessly violates the Act if it takes an action that is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Id.  The Court finds that a reasonable jury, based on the evidence on the record, could conclude that First American's reading of the FCRA went beyond mere carelessness.[1]

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. #39) is **DENIED.**

---

[1] Having granted neither party's motion for summary judgment, the Court need not consider the issue of attorney fees.

2. Defendant's Motion for Summary Judgment (Doc. #37) is

   **DENIED.**

   **DONE AND ORDERED** at Fort Myers, Florida, this ___10th___ day of

June 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-17-